## The Mary McCabe, etc.

(*District Court, S. D. New York.* December 29, 1884.)

**1. Jurisdiction—State Boundaries—Maritime Lien.**

Under the boundary agreement of 1833, between the states of New York and New Jersey, although the state of New York has exclusive jurisdiction over the waters of the bay of New York, to the low-water mark on the westerly, or New Jersey, shore, except the wharves, docks, and improvements made on the shore, and vessels aground or fastened to such wharf, etc., the state of New Jersey has exclusive jurisdiction over such wharves, and vessels so fastened.

**2. Same—Maritime Lien—Repairs and Supplies.**

Sails were sent by the libelant from New York to a vessel at Keyport, New Jersey, "lying at a brick-yard at the dock," and her owners resided there; *held,* that the vessel was within the jurisdiction of the state of New Jersey, and not within the jurisdiction of the state of New York; and that no maritime lien existed for supplies delivered there, and the libel was therefore dismissed.

In Admiralty.

*Arthur Murphy, Jr.,* and *E. G. Duvall,* for libelant.

*Oscar Frisbie,* for claimant.

Brown, J. The libel in this case was filed to recover for repairs and supplies furnished to the schooner Mary McCabe. The schooner was owned and registered in New Jersey. While she was lying by a dock at a brick-yard at Keyport, New Jersey, the libelant, of New York city, was procured by her owner to furnish her with a set of sails. The libelant went to Keyport, took the measures required, made the sails, and delivered them on board the schooner there. The libel contains no averment of any statutory lien by the law of New Jersey; but alleges a maritime lien for supplies furnished to a foreign vessel, on the ground that while lying at Keyport she was within the waters and the jurisdiction of the state of New York. But if this vessel, though lying at Keyport, was neither within the state of New York nor within the jurisdiction of the state of New York, but within the jurisdiction of New Jersey, then it is clear that the supplies were furnished within the state of the owner's residence, and not in a foreign port, and that no maritime lien exists, such as is necessary to sustain this action *in rem.*

The long-controverted question between the states of New York and New Jersey, concerning their boundary lines and their respective jurisdictions over the adjacent waters, has been, in the main, determined by the adjudication in the supreme court in the *Case of Devoe Manuf'g Co.* 108 U. S. 401; S. C. 2 Sup. Ct. Rep. 894. That decision holds that the boundary agreement between the two states, made September 16, 1833, and afterwards ratified by congress, (4 St. at Large, 708,) determines, so far as it extends, not only the boundary and the jurisdictions of the two states, but also the limitations of the jurisdiction of the United States district courts of New York and of New Jersey. Keyport lies on the south-westerly shore of the lower bay, and along the southerly and easterly side of the

mouth of the Matavan, or Middletown, creek. It is within the state of New Jersey; and the adjacent lands under water to the northward, beneath the waters of Raritan bay, also belong to the state of New Jersey, the boundary line of which, by the agreement above referred to, is "the middle of Raritan bay and New York bay." By article 3 of the agreement, it is provided that "the state of New York shall have and enjoy exclusive jurisdiction of and over all the waters of the bay of New York, and of and over the lands covered by the said waters to the low-water mark on the westerly or New Jersey side thereof; subject to the following rights of property and of jurisdiction of New Jersey:" "(1) The state of New Jersey shall have the exclusive right of property in and to the land under water lying west of the middle of the bay of New York;" and "(2) the exclusive jurisdiction of and over the wharves, docks, and improvements made on the shore, and of and over all vessels aground on said shore, or fastened to such wharf or dock." New Jersey has also exclusive jurisdiction of all the waters of Raritan bay lying west of Matavan creek.

Assuming what is most favorable to the libelant, that the "bay of New York" includes the lower bay as well as the upper bay, so that this schooner, if not aground nor fastened to any dock at Keyport, might be within the jurisdiction of New York under the above article 3; still, the exception of "vessels aground or fastened to the dock" would apply to the present case, and make this schooner, at the time when the supplies were furnished and delivered to her, within the jurisdiction of New Jersey, although the testimony as to her exact situation is not very explicit. The vessel is described as "lying at a brick-yard" at Keyport, without sails, and in distress; and the witnesses Kirby and Hammond speak of her as "lying at the dock," and "needing sails before she could leave the dock." It must be assumed, therefore, in the absence of any more explicit evidence, that this schooner was in some way fastened to the dock at the brick-yard, and hence, within the exclusive jurisdiction of New Jersey, the state of her owner's residence, where the supplies were furnished; and, consequently, not subject to a maritime lien therefor. The libel must, therefore, be dismissed.